**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
PHILIP LYONS,

                                        **Petitioner,**

                  - v -                                                    **9:03-CV-503**
                                                                           **(NAM/RFT)**

**JAMES CONWAY, Superintendent of Attica**
**Correctional Facility,**

                                        **Respondent.**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**APPEARANCES:**                        **OF COUNSEL:**

**PHILIP LYONS**
Petitioner, *Pro Se*
98-B-0505
Attica Correctional Facility
Box 149
Attica, New York 14011-0149

**HON. ELIOT SPITZER**                  **SENTA B. SIUDA, ESQ.**
Attorney General for the                Assistant Attorney General
State of New York
Attorney for Respondent
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

**NORMAN A. MORDUE, Chief, United States District Judge**

                      **MEMORANDUM-DECISION AND ORDER**

**I.      BACKGROUND**

        **A.      State Court Proceedings**

        According to the testimony adduced at trial, on the evening of July 30, 1997, Patricia

Sparano ("Patricia") drove her son, Peter, to his baseball game at Emerson Park in Cayuga

County, New York.  *See* Transcript of Trial of Philip Lyons (2/6/98) ("Trial Tr.") at p. 693.  After

her son exited the vehicle, Patricia parked her car in the parking lot of the Green Shutters

restaurant near the baseball field.  *Id.* at pp. 694-98.  Sometime thereafter, petitioner, *pro se* Philp

Lyons drove his van to the Green Shutters' parking lot so that he could talk with his friend, Patricia, about his recent cancer diagnosis. *Id.* at pp. 1159-60, 1167. During their conversation, Patricia consoled him and assured him that numerous other individuals had survived the disease. *Id.* at pp. 1167-68.

At approximately 9:00 p.m., Patricia's husband, Peter Sparano, drove into the Green Shutters parking lot and parked his vehicle directly in front of Lyons' van. *Id.* at pp. 704-05, 1168. Sparano exited his vehicle, approached his wife and directed her to get her "fucking ass in the car." *Id.* at pp. 706, 1170. Sparano then pushed her aside, approached Lyons (who at the time was sitting on the edge of his van) and asked him "what are you fucking doing with my wife?" *Id.* at pp. 706-07, 1170. After Sparano "threw a few punches at" Lyons, Sparano began to punch his wife. *Id.* at p. 707. When Lyons attempted to intervene, Sparano began "going back and forth" between punching Lyons and his wife. *Id.* at pp. 707-08. At a time when Sparano had turned his attention to his wife, Lyons reached back in his van and grabbed an unlicensed, loaded, handgun which he kept in his vehicle. *Id.* at pp. 1180-81, 1202, 1224. Lyons then "chambered" the gun and fired the weapon at Sparano as he approached Lyons. *Id.* at pp. 1182-83.[1] Sparano continued coming toward Lyons, however, and, because he believed the first shot had not hit Sparano, Lyons fired a second round at Sparano which hit him and caused him to fall to the ground. *Id.* at pp. 1184-85.[2] Lyons then dragged Sparano across the parking lot, and, with the

---

[1]     Lyons, who was fifty one years old at the time of the incident, Trial Tr. at p. 999, had been wearing prescription glasses since he was approximately ten years old. *Id.* at p. 1011. An optometrist testified at trial that Lyons suffered from a "moderately high" nearsighted condition. *Id.* at p. 941.

[2]     Lyons testified that he could not clearly see Sparano at that time because Lyons' vision was "really blurred" since he had been crying at the time and the prescription glasses Lyons had been wearing were knocked off during the fight with Sparano. Trial Tr. at pp. 1176, 1182.

assistance of Patricia, placed Sparano in Lyons' van.  *Id.* at pp. 712, 1237-38.

Around that time, Patricia made arrangements for someone to care for her son (who was still playing baseball at the time) and then drove to the Auburn Police Department in her husband's vehicle.  *Id.* at p. 714.  After finding his glasses, Lyons began driving Sparano, who was still breathing at the time, *id.* at pp. 712-13, 1191, to the Auburn Memorial Hospital.  *Id.* at p. 1192.  Upon arriving at that facility, Lyons informed the receptionist that he had a gunshot victim in his van.  *Id.* at p. 1193.  Soon thereafter, law enforcement agents handcuffed Lyons and escorted him outside.  *Id.* at pp. 1195-96.  Lyons then informed the officers that the gun used for the crime was located in his van and provided them with his car keys so that they could take possession of that weapon.  *Id.* at p. 1197.  Sparano eventually died as a result of gunshot wounds to both his head and chest.  *Id.* at p. 652.

As a result of the foregoing, a Cayuga County grand jury returned a four count indictment against Lyons.  In that accusatory instrument, the grand jury charged Lyons with both the intentional and depraved indifference murder of Sparano, as well as second and third degree criminal possession of a weapon.  *See* Indictment No. 97-089 (reproduced in Record on Appeal at pp. 6a-7a ("Indictment").  Beginning on February 2, 1998, Lyons was tried before a jury on those charges in Cayuga County Court with Acting Supreme Court Justice Peter E. Corning presiding.  After the prosecution rested, the defense called several witnesses, including Lyons, who testified, in substance, that his actions on the evening of July 30, 1997 were justified because at the time he shot Sparano, Lyons feared for his life.  *E.g.*, Trial Tr. at pp. 1170-85.  On February 11, 1998, following the parties' summations, the trial court charged the jury and submitted to them for consideration the four counts in the Indictment.  *Id.* at pp. 1511-73.  After requests by the jury for the reading back of testimony and clarification by the trial court as to the elements of the crimes

that Lyons was accused of committing, *id.* at pp. 1574-93, the jury advised the court that it had

reached a verdict. *Id.* at p. 1593. Lyons was thereafter found not guilty of the intentional murder

of Sparano, but guilty of his depraved indifference murder. *Id.* at p. 1594. The jury also

convicted Lyons of both criminal possession of a weapon charges. *Id.* at pp. 1594-95.

On February 26, 1998, Lyons was sentenced by Justice Corning to twenty years to life

imprisonment on the murder conviction, and a lesser, concurrent sentence on the remaining

conviction.[3] *See* Sentencing Tr. at pp. 22-23. Lyons appealed his convictions and sentences to

the New York Supreme Court, Appellate Division, Fourth Department, however on February 7,

2001, that court affirmed Lyons' convictions and sentences in all respects. *People v. Lyons*, 280

A.D.2d 926 (4th Dept. 2001). Leave to appeal to New York's Court of Appeals was denied by

that Court on April 10, 2001. *People v. Lyons,* 96 N.Y.2d 802 (2001).

On May 14, 2002, Lyons filed a motion to vacate his judgment of conviction pursuant to

New York's Criminal Procedure Law ("CPL"), Section 440.10 ("CPL Motion"). That application

was denied in a Memorandum-Decision and Order issued by Justice Corning on June 17, 2002

("June, 2002 MDO").

**B.    <u>This Action</u>**

Lyons commenced this action, *pro se*, on March 30, 2003, in the Western District of New

York. *See* Petition (Dkt. No. 1) at p. 10.[4] Since the challenged convictions occurred within the

---

[3]      At sentencing, the trial court granted defense counsel's motion to dismiss
Lyons' conviction on the third degree criminal possession of a weapon charge because that
conviction was a lesser included offense of criminal possession of a weapon in the second
degree, of which Lyons had also been convicted. *See* Transcript of Sentencing of Philp
Lyons (2/26/98) ("Sentencing Tr.") at pp. 9-10.

[4]      Petitioner attached to his petition as an exhibit thereto a supporting
memorandum of law ("Supporting Mem.").

geographical boundaries of the Northern District of New York, on April 15, 2003, United States

District Judge David G. Larimer of the Western District transferred Lyons' petition to this District

for review.  Dkt. No. 2.

In his petition, Lyons asserts three separate grounds in support of his request for federal

habeas intervention.  Specifically, Lyons argues that:  i) he received the ineffective assistance of

trial counsel; ii) the trial court wrongfully denied Lyons the right to present a meaningful defense

to the charges against him; and iii) the sentence imposed on Lyons is both harsh and excessive.

*See* Petition, Grounds One through Three.  Then-United States Magistrate Judge Gary L. Sharpe

directed the respondent to file a response to the petition, Dkt. No. 4, and on July 29, 2003, the

Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an

answer and memorandum of law in opposition to Lyons' pleading.  Dkt. Nos. 9-10.  In opposing

his petition, respondent argues that none of petitioner's habeas claims have merit.  <u>See</u> Dkt. No.

10 ("Resp. Mem.").

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

In *Rodriguez v. Miller*, 439 F.3d 68 (2d Cir. 2006), the Second Circuit observed that under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> a federal court may award habeas corpus relief with respect to a
> claim adjudicated on the merits in state court only if the
> adjudication resulted in an outcome that: (1) was "contrary to, or
> involved an unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United States"; or
> (2) was "based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding."

*Rodriguez*, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003).  The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also DeBerry*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

"A state court adjudication is 'contrary to' clearly established federal law only if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'"  *Rodriguez*, 439 F.3d at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).  Under the "unreasonable application" clause of the AEDPA, a federal habeas court may only grant the writ where the state court's decision "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Rodriguez*, 439 F.3d at 73 (quoting *Williams*, 529 U.S. at 413).  A federal court engaged in habeas review is not charged with determining whether the state court's

determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams*, 529 U.S. at 409; *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001). The *Rodriguez* court noted that although "'some increment of incorrectness beyond error is required'" in order to grant a federal habeas application, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Rodriguez*, 439 F.3d at 73 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

### B.   Substance of Lyons' Claims

#### 1.   Ineffective Assistance of Counsel

Petitioner initially claims that his trial counsel rendered ineffective assistance. *See* Petition at p. 4. In support of this ground for relief, Lyons contends – as he did in his CPL Motion – that defense counsel improperly failed to call Thomas Lazzaro, Ph.D., as a witness at trial. *See* CPL Motion; *see also* Petition, Ground One. Specifically, petitioner notes that prior to trial, he retained Dr. Lazzaro for purposes of conducting a psychological evaluation of Lyons. Supporting Mem. at pp. 1-2. Dr. Lazzaro concluded in the report he completed following that examination that Lyons suffered from "extreme emotion disturbance" at the time of the shooting, *id.* at p. 2, a condition which could have been asserted by Lyons as a defense at his criminal trial. *See*, *e.g.*, N.Y. Penal Law § 125.25(1)(a). Petitioner argues that despite that report, counsel nevertheless failed to call Dr. Lazzaro as a defense witness and instead called Dr. Peter Battaglia, whose testimony petitioner contends proved detrimental to the defense. *See* Petition at pp. 4-7; Supporting Mem. at pp. 3-6.

In addition to the above-described theory in support of his ineffective assistance claim, Lyons also argues in his initial ground for federal habeas relief, as he did in his direct appeal to

the Fourth Department, that his trial counsel was ineffective because:  1) during the cross-examination of Sergeant Brian Clancy, defense counsel elicited prejudicial testimony concerning the fact that Lyons had invoked his right to counsel while speaking to that officer (*see* App. Br. at pp. 56-57; Petition at p. 7); 2) on two occasions, defense counsel elicited testimony which caused the jury to learn that Lyons was in jail prior to trial (*see* App. Br. at p. 57; Petition at p. 7); 3) he failed to object to improper rulings made by the trial court (*see* App. Br. at p. 57; Petition at p. 7); and 4) several instances of hearsay testimony were wrongfully received into evidence without objection by defense counsel (*see* App. Br. at p. 57; Petition at p. 7).

### (a)      Failure to Call Dr. Lazzaro as a Defense Witness

In denying Lyons' CPL Motion, Justice Corning concluded:

> Where, as here, a "ground or issue raised upon the motion was previously determined on the merits upon an appeal from judgement", a motion made pursuant to CPL § 440.10 must be denied.  CPL § 440.10(2)(a).

*See* June, 2002 MDO at (unnumbered) p. 2.  Thus, this aspect of Lyons' ineffective assistance claim is arguably procedurally defaulted, due to the trial court's reliance on CPL § 440.10(2)(a) as a basis for its decision denying that application.  *E.g. Fernandez v. Artuz*, 402 F.3d 111, 115 n.4 (2d Cir. 2005) (a denial of a claim under CPL § 440.10(2)(a) is a procedural denial of a claim). However, respondent has not raised Lyons' procedural default as an affirmative defense to this portion of Lyons' petition.  *See* Resp. Mem. at pp. 5-8.  Therefore, respondent has waived this potential argument in opposition to this aspect of Lyons' claim for relief.  *See Barnard v. Burbary*, No. 03-CV-0362,  ___ F.Supp.2d ___, 2006 WL 2640650, at *3 (W.D.N.Y. Sept. 14, 2006) (citing *Larrea v. Bennett*, No. 01 CIV. 5813, 2002 WL 1173564, at *12 n.15 (S.D.N.Y. May 31, 2002)) (where respondent failed to argue that denial of claim under CPL § 440.10(2)(a)

constituted procedural default, "respondent ... waived the affirmative defense of procedural default, and the Court may consider this branch of petitioner's ineffective assistance of counsel claim on the merits") (other citations omitted).  This Court will therefore review *de novo* the trial court's decision denying this theory alleging ineffective assistance of counsel.  *E.g.*, *Marengo v. Conway*, 342 F.Supp.2d 222, 227 (S.D.N.Y. 2004) ("[i]f the state court's adjudication of a petitioner's federal claim is not based on the merits – for example, when the decision rests solely on procedural grounds... the ... federal court must apply a pre-AEDPA *de novo* review to the state court's disposition of the federal claim") (citing *Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (other citation omitted).

In the report Dr. Lazzaro drafted following his psychological testing of Lyons, Dr. Lazzaro concluded that Lyons suffered from extreme emotional disturbance at the time of the incident giving rise to the Indictment.  *See* Supporting Mem. at pp. 1-2; *see also* CPL Motion at Exh. A.  Lyons argues herein that:

> For no logical or strategic reason, the trial counsel refused to call Dr. Lazzaro as a defense witness, even though the petitioner and his attorney had thoroughly reviewed the doctor's report and both agreed that it was completely in his favor for a lesser verdict that would substantially reduce the length of any sentence he would have to serve and possibly cause no prison time at all.

Petition at p. 4.

Respondent argues that this aspect of Lyons' petition is without merit.  *See generally* Resp. Mem. at pp. 5-8.

At trial, Lyons' counsel did not pursue the defense of extreme emotional disturbance but instead chose to pursue a defense to the charges which alleged that Lyons had acted in self defense on the night of July 30, 1997.  *E.g.*, Trial Tr. at pp. 1145-46.

Strategic choices of trial counsel "'are virtually unchallengeable' in habeas corpus

proceedings." *Bonneau v. Scully*, Nos. 86 Civ. 270, 86 Civ. 3901, 1991 WL 90739, at *1

(S.D.N.Y. 1991) (citing *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984)), *aff'd*, 956 F.2d

1160 (2d Cir. 1992).  Additionally, Senior Judge Neal P. McCurn of this District has recently

noted:

> Generally, the decision whether to pursue a particular defense is a
> tactical choice which does not rise to the level of a constitutional
> violation....  [T]he habeas court will not second-guess trial strategy
> simply because the chosen strategy has failed ... especially where
> the petitioner has failed to identify any specific evidence or
> testimony that would have helped his case if presented at trial.

*Campbell v. Greene*, 440 F.Supp.2d 125, 150 (N.D.N.Y. 2006) (quoting *Nieves v. Kelly*, 990

F.Supp. 255, 264 (S.D.N.Y. 1997)) (other citations and internal quotations omitted).

Petitioner has not demonstrated that trial counsel's decision to pursue a defense which

argued that Lyons acted in self-defense on the evening of the shooting, rather than one which

claimed that Lyons' actions were the product of an extreme emotional disturbance, was

objectively unreasonable.  In fact, Dr. Lazzaro himself – whom Lyons argues his trial counsel

improperly failed to call as a defense witness – testified in an affidavit that he met with defense

counsel and, in discussing the potential defenses Lyons might assert at trial, Dr. Lazzaro

"conceded that self-defense could potentially be a stronger defense, based on all [Dr. Lazzaro]

knew about the case."  *See* Affidavit of Dr. Thomas A. Lazzaro (2/21/02) (reproduced in CPL

Motion at Exh. 1(a)).[5]

Furthermore, it does not appear to this Court as though Lyons was prejudiced, in any way,

by counsel's failure to call Dr. Lazzaro as a defense witness.  Lyons argues that Dr. Lazzaro

would have offered testimony favorable to Lyons with respect to the defense of extreme

_____

[5]     Lyons' trial testimony, which strongly suggested that he had acted in self-
defense at the time he shot Sparano, *e.g.*, Trial Tr. at pp. 1170-85, also seems to support the
strategic decision of counsel to pursue the justification defense.

emotional disturbance.  *E.g.*, Petition at p. 4.  However, although extreme emotional disturbance is an affirmative defense to the charge of intentional murder, *see Manzella v. Senkowski*, No. 97-CV-921, 2004 WL 1498195, at *20 (W.D.N.Y. July 2, 2004) (citing N.Y. Penal L. §§ 125.27(2); 125.25(1)), "the defense of extreme emotional disturbance is ***not*** a defense to depraved indifference murder."  *Shields v. Duncan*, No. 02-CV-6713, 2003 WL 22957008, at *16 (E.D.N.Y. Oct. 20, 2003) (emphasis added) (citing *People v. Fardan*, 82 N.Y.2d 638 (1993)); *see also Wright v. Duncan*, No. 00 CV 530, 2001 WL 761193, at *3 (E.D.N.Y. July 5, 2001).  Since Lyons was convicted of depraved indifference murder, he was not prejudiced by counsel's failure to call a witness whose testimony would have principally supported a defense to the intentional murder charge – a charge of which Lyons was ultimately acquitted.  *E.g.*, *Shields*, 2003 WL 22957008, at *16.[6]  This Court therefore finds that petitioner's trial counsel did not render ineffective assistance due to his failure to utilize Dr. Lazzaro as a defense witness.

**(b)**  **Remaining Theories Alleging Ineffective Assistance**

As noted above, the remaining theories asserted by Lyons in his habeas petition which allege ineffective assistance were raised by him in his direct appeal of his conviction.  *See* App. Br. at pp. 56-57.  The Appellate Division denied that aspect of Lyons' appeal on the merits. *Lyons*, 280 A.D.2d at 928.  Thus, this Court must consider the remaining claims raised by Lyons in support of this ground under the deferential standards required by the AEDPA.

**i)**  **Clearly Established Supreme Court Precedent**

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his

---

[6]  The defense of justification, which was asserted by trial counsel, is a defense to both depraved indifference and intentional murder.  *See Wright*, 2001 WL 761193, at *3 (citing *People v. McManus*, 67 N.Y.2d 541, 549 (1983)).

defence."  U.S. Const., Amend. VI.  To establish a violation of this right to the effective

assistance of counsel, a habeas petitioner must show both:  (1) that counsel's representation fell

below an objective standard of reasonableness, measured in the light of the prevailing

professional norms; and (2) resulting prejudice that is, a reasonable probability that, but for

counsel's unprofessional performance, the outcome of the proceeding would have been different.

*Strickland*, 466 U.S. at 688-90; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles

that govern claims of ineffective assistance of counsel" were established in *Strickland*).[7]

### ii)    Contrary To, or Unreasonable Application Of, Relevant Supreme Court Precedent

### (1)    Invocation of Right to Remain Silent

Petitioner argues that his trial attorney wrongfully elicited testimony during cross-

examination of a prosecution witness that Lyons had exercised his constitutional right to counsel

while being questioned by a police officer shortly after the shooting.  Petition at p. 7.  Petitioner

argues that if the prosecution had elicited such testimony, the Fourth Department would have

concluded that such conduct constituted error.  *Id.*  Lyons claims that this Court must therefore

conclude that his trial attorney rendered ineffective assistance when counsel brought that

testimony out while questioning a prosecution witness.  *Id.*

The trial transcript reveals that while cross-examining Sergeant Clancy, defense counsel

asked that witness to describe to the jury the thrust of that officer's conversation with Lyons after

he had been arrested.  Trial Tr. at p. 195.  Although Sergeant Clancy began his response to that

question by stating that Lyons had informed the officer that petitioner was "not too good" that day

and he had recently been diagnosed with cancer, the officer ended his response to counsel's

---

[7]       In *Williams*, the Supreme Court declared that "the rule set forth in *Strickland*
qualifies as "clearly established Federal law[.]" *Williams*, 529 U.S. at 391.

question by volunteering that after speaking with the officer for period of time, Lyons eventually invoked his right to have an attorney present with him during police questioning. *Id.* at pp. 195-96.

However, petitioner himself concedes that the officer "blurted out" the fact that Lyons had invoked his right to counsel. Petition at p. 7. Since the officer's answer to defense counsel's question could properly be viewed as being non-responsive to trial counsel's question, Lyons' attorney "can hardly be deemed ineffective on that basis." *Manning v. Walker*, No. 99-CV-5747, 2001 WL 25637, at *19 n.18 (E.D.N.Y. Jan. 3, 2001) (counsel not ineffective where witness blurted out statement that was not responsive to question posed by counsel during cross-examination).

Moreover, petitioner has wholly failed to demonstrate that he was prejudiced by this comment which Sergeant Clancy volunteered. In this regard, the Court notes that Lyons himself testified that while being questioned by a police officer shortly after the shooting, he "told [the officer] that [Lyons] probably ought to talk to [his] attorney." Trial Tr. at p. 1198. Thus, even if trial counsel had not elicited the testimony from Sergeant Clancy which established that Lyons had invoked his right to counsel, Lyons himself chose to inform the jury of that fact during his trial testimony.

      **(2)**      <u>**Testimony That Revealed That Lyons Was Incarcerated Prior to His Trial**</u>

Lyons next argues that his counsel wrongfully elicited testimony which established that Lyons was in jail while he was awaiting his criminal trial. *See* Petition at p. 7.

The trial transcript reflects that during his cross-examination of a prosecution witness, defense counsel asked such witness whether Lyons had been returned to the Public Safety Building after his arraignment. Trial Tr. at p. 261. That witness confirmed that after the

13

arraignment, Lyons was returned to the Cayuga County Jail.  *Id.*  However, this aspect of Lyons' ineffective assistance claim fails to acknowledge the fact that the jury would necessarily have been made aware Lyons' pretrial incarceration in conjunction with Lyons' claim that his actions on the evening of July 30, 1997 were justified.  Specifically, the Court notes that in presenting evidence supporting Lyons' justification defense, trial counsel called Dr. Dieter Eppel to testify about a bruise Lyons had sustained during the course of his altercation with Sparano.  *Id.* at pp. 934-35.  In laying the foundation for the admission of that favorable testimony, Dr. Eppel testified that he had previously received a call from a nurse employed at the jail who requested that Dr. Eppel examine Lyons' injury at that facility.  *Id.* at p. 933.  Additionally, a registered nurse employed by the Cayuga County Sheriff's Department also provided testimony that buttressed Lyons' claim that he was assaulted by Sparano on the night of the shooting.  Testimony from that nurse that she was working at the Cayuga County Jail when she examined Lyons provided the necessary foundation for that witness to thereafter offer the testimony that supported his justification defense.  *See id.* at pp. 909-12.

Therefore, even assuming, *arguendo*, that it was objectively unreasonable for counsel to have elicited information regarding Lyons' pretrial incarceration from a prosecution witness, petitioner cannot establish that he was prejudiced thereby because the testimony of jail personnel regarding the injuries sustained by Lyons as a result of Sparano's conduct was inextricably intertwined with his justification defense to the murder charge.[8]

### (3)   Failure to Lodge Objections at Trial

Petitioner next claims that he received ineffective assistance because his counsel did not

---

[8]      Additionally, the jury may well have surmised that the trial court would have required Lyons to be confined to jail prior to the trial; Lyons himself testified that he shot Sparano, Trial Tr. at p. 1184, brought his body the hospital, *id.* at p. 1192, and told the police where the murder weapon was located.  *Id.* at p. 1197.

14

object to certain rulings of the trial court which he now claims were prejudicial to the defense. Petition at p. 7 (citing Trial Tr. at pp. 236-37, 363, 721,[9] 729 and 733).

However, in the first two instances cited by petitioner, the trial court did not make any rulings to which the defense could have objected.  *See* Trial Tr. at pp. 236-37, 363.  Thus, this aspect of Lyons' habeas claim is not supported by the record.

The next aspect of this claim relates to photographs taken of Patricia immediately following the shooting on July 30, 1997 which the prosecution eventually succeeded in having received into evidence.  *See* Petition at p. 7; *see also* Trial Tr. at pp. 721, 729, 733.  The trial transcript reveals that defense counsel articulated his concern as to whether the photographs offered by the prosecution accurately depicted Patricia's physical condition on the night Lyons claimed she was physically assaulted by her husband.  Trial Tr. at pp. 717-18.  Although the trial court suggested that it was inclined to find that the photographs did not accurately reflect her injuries, *see id.* at p. 721, Patricia nevertheless testified that the photographs accurately depicted the appearance of her clothing and face that evening.  *Id.* at pp. 732-33.  The photographs were therefore received into evidence without objection.  *Id.* at p. 733.

Although Lyons now argues that counsel rendered ineffective assistance in failing to lodge an objection to the admission of such evidence, Petition at p. 7, it is unclear to this Court how Justice Corning could have properly sustained an objection raised by trial counsel concerning the photographs when the individual portrayed in the photographs herself testified that they accurately depicted her appearance after the altercation in the parking lot with her husband.  *E.g.*, Trial Tr. at pp. 732-33.  Thus, counsel's failure to lodge an objection at the time they were offered

---

[9]      Although Lyons refers this Court to page 721 of the trial transcript as one example of counsel's alleged ineffective assistance, Petition at p. 7, this Court notes that the trial court sustained trial counsel's objection at that time.  Trial Tr. at p. 721.

into evidence clearly did not fall below an objective standard of reasonableness.

Furthermore, even assuming, *arguendo* that the received photographs did not fully and/or accurately depict the extent of Patricia's injuries, the Court notes that defense counsel subsequently succeeded in having other photographs of Patricia's injuries received into evidence. *Id.* at pp. 961-62. Additionally, Margaret O'Connell, a defense witness, described in detail the bruising she observed on Patricia immediately after the assault. *Id.* at pp. 963-65. The foregoing establishes that Lyons was not prejudiced as a result of counsel's failure to object to the admission into evidence of the prosecution's photographs of Patricia.

### (4)   Introduction of Hearsay Testimony

Finally, petitioner asserts that hearsay testimony was improperly received into evidence without any objection from defense counsel on three separate occasions during the course of the related criminal trial. *See* Petition at p. 7; Trial Tr. at pp. 145, 148 and 186.

The first two instances referenced by Lyons occurred during the direct examination of Officer Mark LoCastro of the Auburn police department. On the first occasion, Officer LoCastro testified that he had received a report which indicated that a shooting victim, as well as the perpetrator of the crime, were en route to Auburn Memorial Hospital. Trial Tr. at p. 145. The second instance of hearsay testimony cited by Lyons occurred when Officer LoCastro stated that when he arrived at the hospital, he was informed by several people of the location of Lyons' van. *Id.* at p. 48. Although defense counsel did not object to the foregoing hearsay testimony, Lyons could not establish that he was prejudiced as a result of the receipt of that testimony because, as noted above, Lyons himself testified that he drove his van to the hospital after shooting Sparano, parked his car near that building, and informed law enforcement agents that the gun was located in his van. *Id.* at pp. 1192-95.

The third and final instance of hearsay testimony which Lyons claims was improperly received into evidence relates to the testimony of a prosecution witness who testified that he learned from another officer that there had been a shooting, and that he also learned from Patricia that her husband had been shot.  *See* Petition at p. 7; Trial Tr. at p. 186.  However, the trial transcript reveals that defense counsel in fact lodged an objection to the foregoing testimony, which the trial court sustained on hearsay grounds.  Trial Tr. at p. 186.  Thus, this aspect of counsel's representation clearly did not fall below an objective standard of reasonableness.

In sum, Lyons' claim that he received the ineffective assistance of counsel because his attorney failed to call Dr. Lazzaro as a defense witness at trial is without substance even affording that claim a *de novo* review.  As to the remaining theories now asserted by Lyons in support of this ground for relief, this Court finds the decision of the Appellate Division denying this appellate claim, *see Lyons*, 280 A.D.2d at 928, to be neither contrary to, nor involve an unreasonable application of, *Strickland* and its progeny.  Accordingly, this Court denies Lyons' first ground for relief.

## 2.    <u>Right to Present a Defense</u>

In his second ground, petitioner alleges the trial court denied Lyons his constitutional right to present a meaningful defense to the charges against him.  *See* Petition, Ground Two.  In support of this claim, petitioner argues that the trial court wrongfully denied counsel's request: (a) for permission to conduct a re-direct examination of a defense witness; (b) to recall one of its witnesses; and (c) to introduce into evidence a certificate of conviction that Sparano had received in 1992.  *See* Petition, Ground Two.

"The right to present evidence is, of course ... required by the Due Process Clause."  *Jenkins v. McKeithen*, 395 U.S. 411, 429 (1969) (citing *Morgan v. United States*, 304 U.S. 1, 18

(1938)) (other citation omitted).  This right is "particularly fundamental" in the context of criminal proceedings.  *Jenkins*, 395 U.S. at 429.  Moreover, the right to call witnesses in defense of criminal charges against oneself is also a fundamental constitutional right.  *Taylor v. Illinois*, 484 U.S. 400, 408-09 (1988).  As the Supreme Court noted in *Chambers v. Mississippi*, 410 U.S. 284 (1973), "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Id.* at 302.

In considering a habeas petitioner's claim alleging trial court error, habeas courts have historically inquired into whether the claimed error had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)) (other citation omitted). Following the enactment of the AEDPA, however, it became an "open question" in the Second Circuit whether the applicable test on federal habeas review of a state court conviction should remain the one set forth in *Brecht*, or instead focus upon a consideration of whether the state court's decision was contrary to, or involved an unreasonable application of, *Chapman v. California*, 386 U.S. 18 (1967).[10]  *See Benn v. Greiner*, 402 F.3d 100, 105 (2d Cir. 2005) (citation omitted); *Harvall v. Phillips*, No. 03-CV-2968, 2005 WL 2095725, at *8 (E.D.N.Y. Aug. 30, 2005).

In *Gutierrez v. McGinnis*, 389 F.3d 300 (2d Cir. 2004), the Second Circuit resolved one aspect of this question when it determined that when a state court had explicitly conducted harmless error review of a claimed constitutional error, a federal habeas court must evaluate whether the state court's decision reflected an unreasonable application of *Chapman*.  *See*

---

[10]    In *Chapman*, the Supreme Court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.*, 386 U.S. at 24.

*Gutierrez*, 389 F.3d at 306; *see also Zappulla v. New York*, 391 F.3d 462, 467 (2d Cir. 2004). Where, however, the state court did not engage in a harmless error analysis, the Second Circuit has not yet decided whether the *Chapman* or *Brecht* test is to be applied by the federal habeas court. *See Howard v. Walker*, 406 F.3d 114, 123 (2d Cir. 2005) (citing *Gutierrez*) (other citation omitted); *Hogan v. West*, ___ F.Supp.2d ___, No. 03 CV 6321, 2006 WL 2699745, at *16 & n.7 (W.D.N.Y. Sept. 21, 2006) (noting that the standard of review to be utilized where state court found no error on part of trial court remains unresolved in this circuit); *Crispino v. Allard*, 378 F.Supp.2d 393, 406 (S.D.N.Y. 2005) (citations omitted); *Harvall*, 2005 WL 2095725, at *8; *Ellis v. Phillips*, No. 04CIV.7988, 2005 WL 1637826, *24 n.45 (S.D.N.Y. July 13, 2005) (Peck, M.J.) (collecting cases).

In the related criminal matter, the Fourth Department did not engage in harmless error analysis in considering Lyons' claims alleging error on the part of the trial court and instead determined that Justice Corning had not erred with respect to any of the rulings challenged by petitioner. *Lyons*, 280 A.D.2d at 927-28. In view of the uncertainty within this circuit as to which standard of review is to be employed on such claims, this Court will examine the theories raised by Lyons in support of this aspect of his petition utilizing both standards. *E.g.*, *Hogan*, ___ F.Supp.2d at ___, 2006 WL 2699745, at *16; *Harvall*, 2005 WL 2095725, at *9; *Brown v. Senkowski*, 97 CIV. 4415, 2004 WL 2979792, at *17 (S.D.N.Y. Dec. 14, 2004).[11]

Considering first Lyons' claim that the trial judge erred by denying trial counsel's request

---

[11]    Additionally, the Second Circuit has recently opined that "when a trial court has not made a state evidentiary error," courts "must consider whether the evidentiary rule the court applied is arbitrary or disproportionate to the purposes it is designed to serve." *Hawkins v. Costello*, 460 F.3d 238, 245 (2d Cir. 2006) (citing *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). The *Hawkins* court noted that federal courts can only find the rule to be arbitrary or disproportionate where it "infringes on a 'weighty interest of the accused.'" *Hawkins*, 460 F.3d at 245 (quoting *Scheffer*, 523 U.S. at 308).

to conduct a re-direct examination of defense witness Dr. John Ryan, the record reflects Dr. Ryan

testified about petitioner's physical condition after a surgery that had been performed on Lyons

approximately one week prior to the shooting.  Trial Tr. at pp. 892-97, 901.  The prosecution

briefly asked Dr. Ryan about that surgery and related restrictions on Lyons' physical activity.  *Id.*

at pp. 906-08.  Justice Corning determined that re-direct examination of that witness by defense

counsel was unwarranted because no new testimony was elicited by the prosecution during its

cross-examination of that witness.  *Id.* at p. 908.

   "Rules limiting a defendant's right to present a defense will be upheld so long as they are

not 'arbitrary or disproportionate to the purposes they are designed to serve.'"  *Calderon v.*

*Keane*, No. 97 Civ. 2116, 2003 WL 22097504, at *2 (S.D.N.Y. Sept. 9, 2003) (quoting *Scheffer*,

523 U.S. at 308).  Thus, "a trial judge may reasonably restrict testimony that is only 'marginally

relevant'" to the issues in dispute at trial.  *Calderon*, 2003 WL 22097504, at *2 (quoting *United*

*States v. Holmes*, 44 F.3d 1150, 1157 (2d Cir. 1995)).  Additionally, a "trial judge retains a wide

latitude to exclude irrelevant, repetitive, or cumulative evidence."  *Ayuso v. Artuz*, No. 99 CIV

12015, 2001 WL 246437, at *7 (S.D.N.Y. Mar. 7, 2001) (quoting *Holmes*, 44 F.3d at 1157) (other

citations omitted).

   It is clear from the record that re-direct examination of Dr. Ryan was not necessary

because the cross-examination of that witness did not bring out new evidence that warranted

further exploration by defense counsel or which was harmful to Lyons' defense.  Since Lyons has

not established that Justice Corning's determination that nothing new was brought out on cross-

examination of that witness was erroneous in any way, he has failed to establish that this claimed

error on the part of the trial court had a substantial and injurious effect or influence in determining

the jury's verdict.  This Court alternatively finds that this alleged error was harmless beyond a

reasonable doubt.

Petitioner next contends that the trial court improperly denied defense counsel's request to recall Dr. Eppel so that such witness could clarify his earlier trial testimony.  Petition at p. 8.

The record reflects that trial counsel sought permission to recall Dr. Eppel so that he could clarify his opinion as to how an incision from a surgery that had been performed on Lyons prior to the shooting re-opened as a result of his confrontation with Sparano.  Trial Tr. at p. 958.  The trial court considered and denied counsel's application to recall that witness.  *Id.*

"[T]he decision to alter the order of proof at trial, including the decision of whether to permit a party to recall a witness, is within the trial court's broad discretion."  *Gonzalez v. Bennett*, No. 00 CIV. 8401, 2001 WL 1537553, at *6 (S.D.N.Y. Nov. 30, 2001) (citations omitted).  In the related criminal action, Lyons himself provided detailed testimony concerning his actions – and the actions of Sparano – on July 30, 1997, and Lyons was free to testify as to whether the incision on his back re-opened while he was being assaulted by Sparano.  Lyons has not established that the exercise by Justice Corning of his broad discretion in denying counsel's request to recall Dr. Eppel (who testified before Lyons at trial) had a substantial and injurious effect or influence in determining the jury's verdict.  Nor has he demonstrated that this claimed error was not harmless beyond a reasonable doubt.

The final theory offered by Lyons in support of this ground for relief relates to the decision of the trial court which denied defense counsel's application to introduce into evidence a certificate of conviction for second degree harassment and trespassing which Sparano had received in 1992 after he had been criminally charged with third degree assault.  Petition at p. 8; Trial Tr. at p. 1317.  Justice Corning denied counsel's offer of proof regarding admission of that certificate of conviction, finding, *inter alia*, that:  i) the conviction was too remote in time to be

relevant; and ii) the conduct that gave rise to that conviction did not "rise to the level of the incidents which [were] involved in this case."   *Id.* at p. 1318.

A trial court has "the discretion to admit or disallow evidence of a victim's prior bad acts when a criminal defendant claims a defense of justification."  *Abreu v. Kuhlmann*, No. 99 Civ. 9726, 2000 WL 1773476, at *8 (S.D.N.Y. Dec. 4, 2000) (citing *In re Robert S.* (*Anonymous*), 52 N.Y.2d 1046 (1981) (additional citation omitted).  Moreover, in New York, a trial court should deny a request to admit evidence of a victim's prior bad acts where the proponent of the evidence "'attempt[s] to expand inferences drawn from previous instances of behavior into proof of the actual conduct of the defendant in the circumstances of the particular crime.'"  *Abreu*, 2000 WL 1773476, at *8 (quoting *In re Robert S.,* 52 N.Y.2d at 1047).  In the criminal matter below, defense counsel sought to introduce Sparano's second degree harassment conviction in order to establish that he committed acts of violence on the night of the shooting, thereby suggesting that Lyons' actions were justified.  Trial Tr. at p. 1318.  Therefore, the trial court properly denied counsel's request to admit that certificate of conviction into evidence.  *See*, *e.g.*, *People v. Miller*, 39 N.Y.2d 543, 549 (1976) ("while the deceased's general reputation for violence is provable, evidence of specific acts of violence by the deceased is inadmissible"); *Abreu*, 2000 WL 1773476, at *8 (citation omitted).

Moreover, the trial transcript reflects that Lyons testified that Sparano had previously:  i) claimed to have single-handedly beaten four men in a bar fight (Trial Tr. at p. 1060), ii) boasted that he possessed "hands that were made of steel" (*id.*); iii) slammed his wife's head into a door casing (*id.* at p. 1064); iv) threatened to shoot his son and daughter in the head (*id.* at p. 1066); threatened to kill his wife (*id.* at p. 1068); and v) threatened to kill an individual named Dean McNabb (*id.* at p. 1156-57).  Thus, even absent proof that Lyons was convicted of the crimes of

second degree harassment and trespass, the jury was well aware, through the testimony of Lyons, that he believed Sparano to be a violent individual who put Lyons in fear for his life on July 30, 1997.[12]  Lyons has thus failed to establish that this claimed error on the part of Justice Corning had a substantial and injurious effect or influence in determining the jury's verdict.  Moreover, this alleged error was clearly harmless beyond a reasonable doubt.

Finally, this Court finds that the rules applied by Justice Corning in denying the applications of counsel noted above were not applied arbitrarily by that court or in a manner disproportionate to the purposes such rules were designed to serve.  *E.g.*, *Hawkins*, 460 F.3d at 245.

For all of the foregoing reasons, this Court denies petitioner's second ground for relief as meritless.

### 3.      **Unduly Harsh and Excessive Sentence**

Petitioner's final habeas claim alleges that the sentence imposed on him by the trial court for the murder conviction – twenty years to life imprisonment – is unduly harsh and excessive. *See* Petition, Ground Three; *see also* Sentencing Tr. at p. 22.

This claim, however, fail to acknowledge the established authority which holds that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing *Underwood v. Kelly*, 692 F.Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir. 1989)); *see also Brown v. Donnelly*, 371 F.Supp.2d 332, 343-44 (W.D.N.Y. 2005); *Jackson v. Lacy*, 74 F.Supp.2d 173, 181 (N.D.N.Y. 1999) (McAvoy, C.J.) ("[i]t is well-settled ... that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law").

---

[12]      It should be noted that Sparano's wife testified that her husband could be properly characterized as a "walking time bomb."  Trial Tr. at p. 738.

In New York, the maximum sentence for an individual convicted of second degree depraved indifference murder is twenty-five years to life imprisonment. *Parsons v. Walsh*, No. 01 CV 5840, 2003 WL 21143074, at \*26 (E.D.N.Y. May 12, 2003) (citation omitted); *People v. Demand*, 268 A.D.2d 901, 904 (3d Dept. 2000) (citation omitted). Thus, the twenty year to life sentence imposed on Lyons by Justice Corning is clearly within the range permitted by state law.

Arguably, this ground could be construed as a claim that the sentence imposed constitutes a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime." *Rummel v. Estelle*, 445 U.S. 263, 271 (1980). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel*, 445 U.S. at 272; *see Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (the Eighth Amendment only forbids only sentences which are "grossly disproportionate" to the crime); *see also Hutto v. Davis*, 454 U.S. 370, 374 (1982). A sentence of imprisonment which is within the limits of a valid state statute is simply not cruel and unusual punishment in the constitutional sense. *Brumfield v. Stinson*, 297 F.Supp.2d 607, 622 (W.D.N.Y. 2003) (citing *Thompson v. Lord*, No. 97-CV-0792, 2002 WL 31678312, at \*8 (N.D.N.Y. Nov. 8, 2002) (Peebles, M.J.) [, *adopted*, *Thompson v. Lord*, No. 97-CV-0792 (Dkt. No. 19) (N.D.N.Y. Sept. 25, 2003) (Scullin, C.J.)] (other citations omitted). Therefore, this final claim in Lyons' petition must be denied.[13]

---

[13]     Although petitioner does not clearly specify whether his habeas challenge is addressed solely to the sentence he received for the murder conviction or if such ground challenges both of the sentences imposed on him by Justice Corning, *see* Petition, Ground Three, appellate counsel's brief only claimed that the length of the sentence Lyons received for the second degree murder conviction was harsh and excessive. *See* App. Br. at pp. 64-67. Thus, the only exhausted claim challenging the propriety of Lyons' sentences relates to the sentence imposed on him following the murder conviction. Regardless, the Court notes that in New York, the offense of criminal possession of a weapon in the second degree conviction is a class C felony, *see* New York Penal L. § 265.03, and, as such, the sentencing court must impose a term of imprisonment of between three and one-half years to fifteen

**WHEREFORE**, based upon the above, it is hereby

**ORDERED**, that the petition in this matter is **DENIED** and **DISMISSED**, and it is further

**ORDERED**, that the state court records be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party), and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties by regular or electronic mail.

Dated:        September 30, 2006
              Syracuse, NY

Norman A. Mordue
Chief United States District Court Judge

---

years on a defendant convicted of that crime.  *Id.* at §§ 70.02(1)(b) & (3)(b).  In the related criminal action, the trial court sentenced petitioner to three and one-half to seven years for this conviction, *see* Sentencing Tr. at pp. 24-25, a term well within the statutory range. Thus, no federal question has been presented as to this sentence as well.

25